## Samuel K. Gregg v. C. M. Barnes Co.

1. PRACTICE—*No Necessity for a Formal Ruling upon an Objection.*—There is no necessity for trial courts to formally rule upon an objection. It is sufficient if they dispose of it in some way, whether formally or informally.

2. APPELLATE COURT PRACTICE—*Liberal Rules of Construction to be Applied in Ascertaining the Meaning of the Record in Matters of Court Rulings.*—Courts of review should not apply narrow but liberal rules of construction in ascertaining the meaning of the record in regard to the rulings of the trial court.

Trespass on the Case, for fraud in making false representations. Appeal from the Superior Court of Cook County; the Hon. RUSSELL P. GOODWIN, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed October 30, 1903. Rehearing denied November 6, 1903.

Appellee sued appellant in an action of trespass on the case for alleged fraud in the making of certain representations and recovered judgment for $1,000, from which this appeal is taken. Appellant introduced no testimony at the trial.

The declaration alleges *inter alia* that the defendant, being president of the Standard Boiler Company, a corporation, for the purpose of inducing the plaintiff to execute and deliver its promissory notes for $2,000 to the boiler company and to accept in exchange the notes of the latter for the same amount, falsely and fraudulently 'represented to the plaintiff that the boiler company was solvent and its business in a good and profitable condition; that its

assets amounted to $66,800 and its debts and liabilities did not exceed $12,000; that on the faith of these representations, which were false, to the knowledge of the defendant, he obtained from the plaintiff its three promissory notes, one for $1,000 and two for $500 each, in exchange for which the boiler company delivered its three notes for the like amount to plaintiff; that the boiler company discounted with a bank plaintiff's two notes for $500 each, but did not protect them, and plaintiff has been obliged to pay the same; that all the notes of the boiler company remain unpaid and plaintiff has never realized thereon. The defendant pleaded the general issue.

At the trial the exchange transaction, the discounting of appellee's notes and its payment thereof, and the non-payment of the notes of the boiler company were proven substantially as alleged. It further appeared that the boiler company had a capital stock of 1,000 shares of $100 each, of which appellant had subscribed to 998, J. H. Gregg, his brother, to one share and A. W. C. Ward to the remaining share, and that the business of the company was to manufacture and sell steam boilers and appliances. Its plant was located at Goshen, Ind., and its business office in Chicago.

C. M. Barnes on behalf of appellee testified:

"Mr. Gregg (appellant) said that he proposed to exchange notes for any amount we might desire; that the assets of the boiler company were considerably greater than ours. He said they were worth something like $68,000, and good for any paper they gave."

At the request of the witness appellant then handed him a written statement signed by appellant of the financial condition of the boiler company as follows:

"Assets: Cash, $1,800; bills receivable, $3,000; book accounts, $20,000; merchandise, finished and unfinished, $12,000; raw material, $12,000; machinery and fixtures, $12,000; real estate, $6,000; total assets, $66,800. Liabilities: Bills payable, $8,000; accounts payable, $4,000. Total liabilities, $12,000."

The proof to show the false and fraudulent character of

the representations was the following : Ward, who had been vice-president of the boiler company, went over its books and accounts in May, 1898. (The representations were made early in June of the same year.) He knew nothing as to its actual assets and liabilities, but told appellant after he had looked at the books that he was going to leave the company, and he did leave it a week later. The fair cash value of the company's plant was about $10,000.

One Wheeler, a former salesman of the boiler company, was told by appellant late in May or early in June, 1898, that "unless he could raise some money they would have to close up shop. He wanted me to try and induce my brother to swap notes with him."

Jessie B. Gregg, wife of John H. Gregg, a brother of appellant, testified that in May, 1898, her husband and appellant " needed money to carry on the general expenses," and appellant told her he had borrowed about $5,000. During the same month Mrs. Gregg and her husband asked appellant at the company's office to go over its books with them, and appellant said he did not think it necessary, and induced witness' husband to return to Goshen, promising to "come down next day and bring the books with him; he never brought the books." When he came he said he felt very anxious about not being able to meet a note for $1,000; it was a very serious thing if he did not; his object in coming was to see what could be done to pay the note. He was figuring on the debts of the concern; he thought they were about $35,000. The best thing to do was to be incorporated in Indiana and protect themselves from outside matters. The new incorporation was agreed upon and the next day the papers were sent. All the property of the Illinois company was turned over to the Indiana corporation.

R. H. TOWNE, attorney for appellant.

EDGAR L. MASTERS, attorney for appellee.

Gregg v. C. M. Barnes Co.

MR. JUSTICE STEIN delivered the opinion of the court.

The correctness of the schedule of assets is attacked in respect of the plant only; the schedule giving it, consisting of the real estate, machinery and fixtures, a total value of $18,000, whereas, according to the proof it was worth $10,000. Deducting the difference, $8,000, from the total assets, there would still be left as assets $60,800, and if from this we further deduct $35,000 of liabilities instead of the $12,000 scheduled, the boiler company, having a surplus of $25,800 over all debts and liabilities, would still be largely solvent at the time of the making the representations.

Under the proof there can be no doubt that the boiler company was hard pressed for ready money to meet its maturing liabilities, and that appellant, as its president, was fully aware of this condition. The gravamen of the declaration, however, is the charge of fraud; and in that respect the proof is not clear. True, appellant made some statements concerning the financial status of his concern and seemed unwilling to show its books of account; nevertheless, after making all proper allowance it was worth $25,800, a considerable sum of money, which would render any necessity for a resort to fraud apparently improbable. Had such been his aim and motive, he would likely have converted into cash, even at a great sacrifice, the three notes which he had obtained from appellee, and would not have returned to it the one for $1,000 which he did not succeed in getting discounted at the bank. To say the least, the evidence to prove fraud is doubtful and unsatisfactory, and we are the more constrained to reverse on account of an incident which happened during the closing argument of appellee's counsel, and which may have materially influenced the deliberations of the jury.

Counsel said :

" The fact that the court did not take this case from the jury at the request of defendant's attorneys indicates that there is sufficient evidence that the Standard Boiler Company was insolvent. If there was not sufficient evidence it

would have been the duty of the court to take the case from the jury."

" Mr. Landon :    I object to the statement and move it be stricken out."

" The Court :    You may have an exception."

The record then shows an exception in due form to the ruling of the court.

It is now insisted that there was no ruling to except to; that it was appellant's duty to obtain one, and not having done so he is not in a position to urge error. This contention is untenable. When the court said " You may have an exception," it in effect overruled the objection of counsel to the statement and his motion to strike it out. Trial courts do not always formally rule upon an objection, nor is there any necessity therefor. It is sufficient if they dispose of it in some way, whether formally or informally. It would be unseemly for counsel to insist upon a formal ruling after the court had in its opinion already disposed of the objection, and courts of review should not apply narrow, but liberal rules of construction in ascertaining the meaning of the record in matters of this character.

We are of opinion the remarks of counsel were objectionable and should have been stricken out. The refusal of the court to do so was equivalent to an approval of them and very likely operated upon the jury to the harm of appellant because it prevented them from giving to the evidence that free, unbiased and unprejudiced consideration to which appellant was entitled.

The judgment appealed from is reversed and the cause remanded.